**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

FEB 28 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.   15-10330 |
| Plaintiff-Appellee, | DC No. 3:14-cr-08165-JJT-1 |
| v. | |
| ROGER BITSINNIE, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Arizona
John Joseph Tuchi, District Judge, Presiding

Argued and Submitted October 20, 2016
San Francisco, California

Before:    TASHIMA and M. SMITH, Circuit Judges, and KORMAN,[**] District
Judge.

On the evening of July 23, 2014, Roger Bitsinnie brutally attacked Linda

Smallcanyon.  Following an indictment, on March 27, 2015, Bitsinnie pled guilty

to a single count of violating 18 U.S.C. §§ 1153 and 113(a)(6), for assault resulting

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]    The Honorable Edward R. Korman, United States District Judge for
the Eastern District of New York, sitting by designation.

in serious bodily injury. The district court sentenced Bitsinnie to seventy months' imprisonment and three years' supervised release. On appeal, Bitsinnie challenges the length of his sentence of imprisonment and various conditions of supervised release. Exercising our jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm in part and reverse in part, affirming Bitsinnie's sentence in its entirety, with the exception of two conditions of supervised release.

As the starting point of determining a sentence, the Sentencing Guidelines require the sentencing court to find a defendant's offense level and criminal history category. *See United States v. Rosales-Gonzales*, 801 F.3d 1177, 1180–81 (9th Cir. 2015). Here, the district court calculated Bitsinnie's Total Offense Level to be 22. This reflected a seven-level upward adjustment, imposed pursuant to U.S.S.G. § 2A2.2(b)(3), on the ground that Bitsinnie's conduct resulted in serious bodily injury to the victim. The district court determined Bitsinnie's Criminal History Category to be III. Based on these findings, the district court calculated a preliminary guidelines sentencing range of between 51 and 63 months.

The district court next considered potentially applicable departures. On this point, the district court determined that Bitsinnie's criminal history score underrepresented his numerous, repeated contacts with law enforcement, and concluded that an upward departure under U.S.S.G. § 4A1.3(a) was warranted. To

effectuate this departure, the district court increased Bitsinnie's Total Offense Level from 22 to 24. This resulted in a guidelines sentencing range of 63 to 78 months. The district court then sentenced Bitsinnie to seventy months' imprisonment.

1. Bitsinnie challenges his term of custody on two grounds. First, he argues that the district court erred when it added seven offense levels based upon a finding that Bitsinnie's conduct caused serious bodily injury to his victim. Although U.S.S.G. § 2A2.2(b)(3) permits a district court to add five levels where a victim suffers serious bodily injury, a seven-level enhancement, like the one at issue here, requires a finding of permanent or life-threatening bodily injury. Second, Bitsinnie contends that the district court also erred in how it effectuated its upward departure pursuant to U.S.S.G. § 4A1.3(a)(1). Bitsinnie contends that, although the upward departure itself was supported by the guidelines, the district court erred when it increased his Total Offense Level from 22 to 24. Instead, he argues, the district court should have increased Bitsinnie's Criminal History Category, as suggested by U.S.S.G. § 4A1.3(a)(4)(A).

A. We agree that the district court erred in adding seven offense levels pursuant to § 2A2.2(b)(3), increasing Bitsinnie's Total Offense Level from 22 to 24. The dispositive question, then, in light of Bitsinnie's failure to object at

sentencing, is whether this amounts to plain error. *See United States v. Guzman-Mata*, 579 F.3d 1065, 1068 (9th Cir. 2009). Here, our plain error review incorporates the harmless error standard, and Bitsinnie, rather than the government, bears the burden of showing prejudice. *See United States v. Olano*, 507 U.S. 725, 734–35 (1993) ("Rule 52(b) normally requires the same kind of [harmless error] inquiry, with one important difference: It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice.").

An error in calculating a guidelines sentence may, in fact, be harmless. *See United States v. Munoz-Camarena*, 631 F.3d 1028, 1030 (9th Cir. 2011) (citing *United States v. Ali*, 620 F.3d 1062, 1074 (9th Cir. 2010)). For example, a calculation error may be harmless "if the district court . . . chooses a within-Guidelines sentence that falls within both the incorrect and the correct Guidelines range and explains the chosen sentence adequately . . . [.]" *Id.* at 1030, n.5. Here, Bitsinnie concedes that, absent the error, the district court would have calculated a custody range of 57 to 71 months. Thus, Bitsinnie's actual sentence of seventy months "falls within both the incorrect and the correct Guidelines range[.]" *Id.* Moreover, the district court's rationale for imposing this sentence expressly referenced the nature of Bitsinnie's conduct and the resulting harm to the victim,

namely, his stabbing the victim nine times with three different knives such that one of the knives became lodged in the victim.

On these facts, there is little doubt that this is the exceptional case where a guidelines-calculation error fails to create a reasonable probability of prejudice. *See Molina-Martinez v. United States*, 136 S. Ct. 1338, 1346 (2016) ("There may be instances when, despite application of an erroneous Guidelines range, a reasonable probability of prejudice does not exist."). Accordingly, we conclude that this error was not plain.

**B.** Bitsinnie's second challenge is similarly unsuccessful. This Court has made clear that a district court's decision to depart under U.S.S.G. § 4A1.3(a)(1) is reviewed for substantive, rather than merely procedural, reasonableness. *See United States v. Ellis*, 641 F.3d 411, 421 (9th Cir. 2011). Bitsinnie fails to demonstrate why or how his sentence is substantively unreasonable. And, in any event, even assuming the district court had followed U.S.S.G. § 4A1.3(a)(4)(A), as advocated by Bitsinnie, the resulting guidelines range would be unchanged. Therefore, Bitsinnie's second argument likewise fails.

**2.** Next, Bitsinnie takes issue with eight of the twenty-six conditions of supervised release. Conditions of supervised release "must be reasonably related to the nature and circumstances of the offense; the history and characteristics of the

defendant; or the sentencing-related goals of deterrence, protection of the public, or rehabilitation." *United States v. LaCoste*, 821 F.3d 1187, 1190–91 (9th Cir. 2016) (citations omitted). Additionally, these conditions "must be consistent with the Sentencing Commission's policy statements[,]" and "may involve no greater deprivation of liberty than is reasonably necessary to serve the goals of supervised release." *Id.* (internal quotation marks omitted).

Because Bitsinnie failed to challenge these conditions at the time of imposition, we review for plain error. *See United States v. Wolf Child*, 699 F.3d 1082, 1089 (9th Cir. 2012). Here, six of the eight challenged conditions were properly imposed by the district court. We conclude that these conditions are reasonably related to the factors set forth in 18 U.S.C. § 3553(a) and are not impermissibly vague. Therefore, we affirm the district court's imposition of these conditions.

As to the remaining two conditions, however, Bitsinnie's contentions have merit.

**A.** First, Bitsinnie challenges a condition prohibiting him from "leav[ing] the judicial district or other specified geographic area without the permission of the Court or probation officer." (The "Geographic Limitation Condition.") At the time this condition was imposed, it was a standard condition under U.S.S.G.

6

§ 5D1.3(c).[1]  Nevertheless, Bitsinnie argues that the condition is vague as applied

to him because, upon his release, he intends to return to his residence in the Navajo

Nation.  Once there, Bitsinnie asserts, he will actually reside in three different

judicial districts:  federal, state, and tribal.  As a result, Bitsinnie argues, the

condition is vague.

The government suggests resolving this ambiguity by interpreting "the

judicial district" to refer to the District of Arizona, and "the other specified

geographic area" to refer to the Navajo Nation.  This interpretation, however,

compounds, rather than resolves, the ambiguity.  This is because, on the one hand,

the condition would limit any travel outside of Arizona.   On the other hand, it

would appear to limit travel only outside of Arizona, Utah, and New Mexico.  As a

result, "men of common intelligence" may well be left to "necessarily guess at [this

---

[1]    In November 2016, § 5D1.3(c) was amended.  As part of these
amendments, the condition challenged by Bitsinnie now includes a scienter
element, such that an individual runs afoul of the condition only if he or she
knowingly leaves the judicial district.  This amendment does not affect our
analysis.

condition's] meaning" and, likewise, may "differ as to its application." *United States v. Hugs*, 384 F.3d 762, 768 (9th Cir. 2004) (citation omitted).[2]

**B.** Second, Bitsinnie challenges the condition of supervised release that obligates him to "support [his] dependents and meet other family responsibilities." (The "Dependent Support Condition.") Bitsinnie contends that the district court erred in imposing this condition because he has no dependents to support. The government responds that this is a standard condition under § 5D1.3(c)(4)[3] and that other circuits presume the imposition of such conditions to be suitable.

The government's response is unpersuasive. Notwithstanding the law of our sister circuits, the Ninth Circuit has yet to adopt a presumption that a standard condition is suitable in all instances where supervised release is ordered. But even if we had such a presumption, the government's response is misguided in light of the fact that, under the amended version of § 5D1.3 – that is, the version of

---

[2] Moreover, the court gave no explanation as to why Bitsinnie's local travels should be limited to the District of Arizona (*i.e.*, the State of Arizona, *see* 28 U.S.C. § 82) when much of the territory of the Navajo Nation extends into New Mexico and Utah.

[3] Like the preceding condition, following the amendments made effective in November 2016, this is no longer a standard condition.

8

§ 5D1.3 currently in effect – this condition is now recommended only where a defendant actually has dependents. [4]

Accordingly, we conclude that the district court plainly erred in imposing these two conditions, the Geographic Limitation Condition because it is unduly vague and the Dependent Support Condtion because it bears no relationship to the circumstances or characteristics of the defendant or the offense.

· ● ·

For the reasons set forth above, the district court's sentence is affirmed in all respects, with the exception of the Geographic Limitation and Dependent Support Conditions of supervised release. As to these two conditions only, the district court is reversed and the case remanded. On remand, the district court shall vacate the Dependent Support Condition, but is free to reimpose the Geographic Limitation Condition specifically tailored to the defendant's circumstances.

**AFFIRMED in part, REVERSED in part, and REMANDED with directions.**

---

[4] Again, the district court gave no explanation why the Dependent Support Condition was imposed on a defendant who has no dependents.